# IN THE COURT OF APPEALS OF IOWA

No. 18-0934
Filed September 12, 2018

**IN THE INTEREST OF P.H.,**
**Minor Child,**

**N.H., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Chickasaw County, David F. Staudt,

Judge.


 A mother appeals the termination of her parental relationship with her nine-

year-old daughter. **AFFIRMED.**


 David A. Kuehner of Eggert, Erb, Kuehner & DeBower PLC, Charles City,

for appellant mother.

 Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

 Andrew P. Thalacker, Waterloo, guardian ad litem for minor child.


 Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Nine-year-old P.H. has behavioral issues, trouble bonding, and "a lot of anger" stemming from early childhood traumas, according to her therapist. In terminating the parental relationship between P.H. and her mother, the juvenile court concluded the mother's "poor parenting skills have contributed to the child's trauma." The mother appeals the termination order, alleging the State did not prove P.H. would be unable to return to her care without suffering abuse or neglect.[1] After reviewing the record, we reach the same conclusion as the juvenile court—reunification is not possible given the risk of ongoing harm to P.H.[2]

The juvenile court temporarily removed P.H. from her home after the mother repeatedly failed to pick her up from first grade. In March 2016, the juvenile court adjudicated P.H. as a child in need of assistance (CINA). The detailed CINA order chronicled P.H.'s reports of physical abuse at the hands of her mother and the child's "self-injurious" behaviors at school. The order also noted a neurologist had diagnosed P.H. with "absent seizures" but the mother was inconsistent in administering the child's medication. Notwithstanding its concerns, the juvenile court returned the child to the mother's care under the supervision of the Iowa Department of Human Services (DHS).

---

[1] The order also terminated the parental rights of P.H.'s father, who does not appeal.

[2] We review child-welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings but give them weight, especially when witness credibility is a key consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). As the petitioning party, the State must offer clear and convincing proof, which means we have no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

In July 2016, the State again applied for a temporary removal order, asserting the whereabouts of the family were unknown—the mother initially said they were camping in central Iowa, but actually moved with P.H. to Indiana without notice to the DHS. In August 2016, P.H. returned to Iowa with her paternal aunt, who has since been the child's placement.

Following her return to Iowa, P.H. was evaluated by psychologist George Harper. P.H. told Dr. Harper she had seen her mother's wife, Jessica, hit her mother. In a phone call with Dr. Harper, the mother confirmed she was previously in an abusive relationship and P.H. was exposed to domestic violence before entering kindergarten. P.H. also revealed her mother had physically and emotionally abused her. Dr. Harper opined the abuse P.H. suffered early in her life "has had a very adverse impact on [her] psychological development." Dr. Harper also noted P.H.'s delayed intellectual development. Dr. Harper diagnosed the eight-year-old girl with major depressive disorder, trauma and stressor-related disorder, and generalized anxiety disorder.

Although she returned to Iowa for court hearings, the mother remained living in Indiana until January 2018. Despite her history of mental-health issues, the mother did not consistently participate in services recommended by DHS. She also was sporadic in her contact with P.H.—in the nineteen months P.H. was in her aunt's care leading up to the termination hearing, the mother had only nine face-to-face visits with her daughter. The DHS also offered the mother telephone contact with P.H., but she did not always take advantage of the opportunity— sometimes missing the calls, and sometimes being argumentative with P.H.'s aunt and caregiver. After the mother returned to Iowa, she was sleeping in a friend's

living room and was still "working on getting [her] own place" at the time of the termination hearing.

The State filed a petition to terminate parental rights in December 2017. After a hearing in mid-March 2018, the juvenile court issued its termination order in May. The juvenile court relied on Iowa Code section 232.116(1)(f) as the basis for termination. That section requires proof of the following elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

In her petition on appeal, the mother contests only the fourth element— whether P.H. could be returned to her care at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (indicating statutory language "at the present time" refers to the termination hearing).

Since P.H. was removed from her care, the mother has not put forth enough effort to maintain or rebuild a healthy relationship with her daughter, who is fragile due to her early childhood traumas. A therapist testified to her work with P.H. to address separation issues and develop coping skills.[3] The therapist believed P.H.

---

[3] The therapist was trained in eye movement desensitization reprocessing (EMDR), which she uses to help P.H. "reprocess" her anger at her mom and "all the uncertainty." The therapy improved P.H.'s "ability to bond and express her emotions." The therapist believed P.H. was "more securely bonded" with her aunt. The therapist described the girl's progress: "She's improved in her school functioning. She is no longer wetting the bed. She is expressing her emotions properly some of the time."

"really needs permanency to be able to adjust and properly bond and feel safe in her environment." According to the therapist, P.H. is not bonded with her mother because they have had so little contact over the past year. The therapist testified P.H. "knew a lot of things that were going on with her mom that maybe a little kid shouldn't know" and P.H. expressed she "just wanted to be a kid."

In addition to her fraught relationship with P.H., the mother has a history of unstable housing, which she had not fully addressed by the time of the termination hearing. And although on appeal the mother professed to be "engaged in mental health counseling," she testified she had only one appointment with her counselor since returning to Iowa. The mother also contends on appeal she separated from Jessica and planned to divorce, but she testified they spent two weekends together since their return to Iowa. The mother did not engage in recommended counseling on issues of domestic violence or anger management.

From a careful review of the record, we find clear and convincing evidence P.H. cannot be returned to the mother's custody at the present time without experiencing further upheaval and anxiety. The witnesses agreed P.H. needs consistency and "a very well-structured home"—neither of which her mother can offer her at this time. *See In re J.E.*, 723 N.W.2d 793, 799 (Iowa 2006) (upholding termination under paragraph (f) and noting child's "special needs that require extra attention"). The aunt testified she is willing to adopt P.H., who has grown close to their family. *See* Iowa Code § 232.116(2)(b) (for best-interest analysis, considering whether child has become integrated into foster family). We agree the mother's parental rights should be terminated.

**AFFIRMED.**